UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MENACHEM LANGER,                )
                                )
    Plaintiff,                  )
                                )
v.                              )    No. 3:20-CV-00037-JRG-CRW
                                )
BMW OF NORTH AMERICA, LLC,      )
                                )
    Defendant.                  )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings on Plaintiff's Claims for Contract Revocation and Recission [Doc. 46], Defendant's Memorandum of Law in Support [Doc. 47], Plaintiff's Response [Doc. 51], and Defendant's Reply [Doc. 52]. For the reasons herein, the Court will deny Defendant's motion.

### I. BACKGROUND

Plaintiff Menachem Langer alleges that in 2017 he purchased a 2014 BMW 750Li from Atlanta Luxury Motors in Georgia for $37,442, only to discover afterwards that it "consumed an excessive amount of engine oil." [Am. Compl., Doc. 20, ¶¶ 14–16]. He maintains that he has had to "regularly add[] quarts of oil to his car *in between* oil changes" to prevent the engine—known as the "N63," a "large, high-performance engine [that] was designed to be BMW's next generation V8," [*id.* ¶ 34]—from failing, [*id.* ¶¶ 2, 20]. He alleges that the N63 is defective and that it is, in fact, "widely known" as defective, [*id.* ¶ 37], citing several technical service bulletins that BMW issued to address complaints of excessive oil consumption[1] and the filing of at least

---
[1] Mr. Langer alleges that, according to one of BMW's technical service bulletins, "the N63 vehicles would consume nearly 20 quarts of engine oil between the recommended 15,000-mile oil service intervals." [Am. Compl. ¶ 53].

one other lawsuit in federal district court, [*id.* ¶¶ 5, 47]. According to Mr. Langer, BMW knew that the N63 was defective as early as 2008, having learned of its excessive oil consumption from "pre-release testing data, durability testing, [and] early consumer complaints." [*Id.* ¶ 64]. But BMW concealed its knowledge of the defect, Mr. Langer alleges, not only when he bought the vehicle in 2017 but also when he later presented the vehicle to Grayson BMW in Knoxville, Tennessee ("Grayson BMW")—an authorized dealer of Defendant BMW of North American, LLC ("BMW")—with complaints about its oil consumption. [*Id.* ¶¶ 3, 4, 17, 18]. In response, Grayson BMW allegedly told him that "there was nothing wrong with [the] N63 engine in [his] car and having to add quarts of oil *in between* oil changes was 'normal.'" [*Id.* ¶ 3].

Mr. Langer claims that BMW has "neglected, failed, refused or otherwise been unable to repair" the engine, [*id.* ¶ 68], despite the fact that the vehicle was under a four-year/50,000-mile limited warranty, in which BMW agreed to repair or replace defective parts, [*id.* ¶¶ 25–27]. According to Mr. Langer, his vehicle's excessive oil consumption has required him to pay for additional service visits and maintenance costs, obtain BMW-approved engine oil, and refrain from traveling long distances. [*Id.* ¶ 67]. Specifically, he alleges that he has spent $,1000 in "out of pocket costs." [*Id.* ¶ 22]. In addition, he alleges that he will "suffer significant loss" when he attempts to sell the vehicle because "the reputation of these vehicles has been impaired by now-public research establishing that these vehicles suffer from the oil consumption defect." [*Id.* ¶ 67]. Mr. Langer also maintains that "[t]he cost to repair the Vehicle that involves an engine replacement ranges from $12,500.00 to $15,000.00." [*Id.* ¶ 21].

Mr. Langer has now filed suit in this Court against BMW, alleging claims for breach of warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (Count One); breach of express warranties under Tennessee law (Count Two); and a violation of the Tennessee

Consumer Protection Act ("TCPA"), Tennessee Code Annotated § 47-18-101 *et seq.* (Count Three). Among other remedies, Mr. Langer requests "revocation or rescission" of his purchase of the vehicle. [Am. Compl. at 29].[2] BMW now moves for judgment on the pleadings, arguing that Mr. Langer, as a matter of law, cannot pursue revocation or rescission of the purchase agreement. Mr. Langer opposes BMW's motion. Having carefully considered the parties' arguments, the Court is now prepared to rule on BMW's motion.

## II. LEGAL STANDARD

"The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that create a reasonable inference that the defendant is liable for the alleged conduct in the complaint. *Id.*

When considering a motion to dismiss under Rule 12(b)(6), a court accepts the allegations in the complaint as true and construes them in a light most favorable to the plaintiff. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. *Iqbal*, 556 U.S. at 678. A plaintiff's allegations must consist of more than "labels," "conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted);

---

[2] Mr. Langer also brought claims for violations of the Georgia Fair Business Practice Act ("GFBPA"), Georgia Code Annotated § 10-1-390 *et seq.* (Count Four), and fraudulent concealment under Tennessee law (Count Five). The Court, however, dismissed those claims without prejudice. [Mem. Op. & Order, Doc. 37, at 17].

3

*see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

### III. ANALYSIS

Earlier in this case, BMW moved to dismiss some of Mr. Langer's claims under Rule 12(b)(6) but was unsuccessful. Now, Mr. Langer asserts that BMW is impermissibly attempting to take a "second bite of the apple" by moving for judgment on the pleadings, but he cites no precedent for this assertion. [Pl.'s Resp. at 1]. Rule 12(g) states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion," "[e]xcept as provided in Rule 12(h)(2) or (3)." Fed. R. Civ. P. 12(g)(2). In turn, Rule 12(h) states that "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)[.]" Fed. R. Civ. P. 12(h)(2)(B). BMW's Rule 12(c) motion for judgment on the pleadings is therefore permissible, and Mr. Langer cites no precedent showing otherwise.

The Court begins with Mr. Langer's claim under the TCPA, a claim that it addressed in some detail in its prior memorandum opinion. *See* [Mem. Op. & Order, Doc. 37, at 9–15]. The TCPA forbids "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47–18–104(a). To state a claim under the TCPA, Mr. Langer must allege "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.'" *Hanson v. J.C. Hobbs Co.*, No. W2011–02523–COA–R3–CV, 2012 WL 5873582, at *9 (Tenn. Ct. App. Nov. 21, 2012) (quoting *id.* § 47–18–109(a)(1)). "Rescission of a contract made as a result of an unfair or deceptive trade practice is a proper remedy available

4

under the Tennessee Consumer Protection Act." *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 13 (Tenn. Ct. App. 1992) (citations omitted).

Citing numerous cases, BMW, however, maintains that "[t]he TCPA does not permit rescission against non-parties to a contract." [Def.'s Mem. at 6]. "[T]hat remedy," it says, "is available only against the counterparty to the purchase contract, Atlanta Luxury Motors," which is not a party to this action, and not against BMW. [*Id.* at 7]. According to BMW, Mr. Langer "does not allege that [it] . . . sold the 750Li to him," so his request for rescission is improper. [*Id.* at 1]. But BMW overlooks that fact that Mr. Langer, though he does indeed allege that he purchased the 750Li from Atlanta Luxury Motors, [Am. Compl. ¶ 14], also alleges that BMW did in fact sell the 750Li to him: "This is an action by the purchaser of a vehicle distributed, warranted, *and sold* by the Defendant BMW of North America," [*id.* ¶ 1 (emphasis added)].

The Court does not have license to respond to these facially inconsistent allegations with the measure that BMW believes is appropriate—dismissal. Rather, the Court must review Mr. Langer's complaint for "*any* set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (emphasis added) (citation omitted); *see Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations. District judges looking to dismiss claims on such grounds must look elsewhere for legal support." (footnote omitted)). Because Mr. Langer alleges that BMW sold the 750Li to him—an allegation that the Court must accept as true, *Mixon*, 193 F.3d at 400—BMW's argument that it is a non-party to the purchase agreement fails.[3] Mr. Langer's allegations, when accepted as true, therefore suffice

---

[3] BMW has not attempted to repudiate this allegation by filing the purchase agreement alongside its motion for judgment on the pleadings. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) ("[A] document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings" if "[it] is referred to in the complaint and is central to the plaintiff's claim." (citation and quotation omitted)).

to allow him to pursue rescission under the TCPA. *See* [Def.'s Mem. at 6 (acknowledging that "contract rescission [is] an appropriate remedy against the defendant under the TCPA" when "the plaintiff and defendant [are] parties to the relevant contract")]. The Court, at this juncture, has no need to address BMW's second argument—i.e., whether this same remedy is available to Mr. Langer under the Magnuson-Moss Warranty Act. *Cf. Hickson Corp. v. Norfolk S. Ry. Co.*, 260 F.3d 559, 567 (6th Cir. 2001) (recognizing that, under Tennessee law, a party "is entitled to the greatest amount recoverable under any single theory pled").

## IV. CONCLUSION

Mr. Langer alleges that BMW sold the 750Li to him, and that allegation, when the Court accepts it as true, is sufficient to establish that Mr. Langer and BMW are parties to the purchase agreement. BMW's argument that Mr. Langer cannot pursue rescission of the contract therefore fails, and Defendant's Motion for Judgment on the Pleadings on Plaintiff's Claims for Contract Revocation and Recission [Doc. 46] is **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE

6

Case 3:20-cv-00037-JRG-CRW   Document 53   Filed 08/02/21   Page 6 of 6   PageID #: 466